UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| DAVID WILGUS and ANGELA MYERS, Individually and on Behalf of all Others Similarly Situated, <br><br> Plaintiffs, <br><br> v. <br><br> HARTZ MOUNTAIN CORPORATION and WAL-MART STORES, INC., <br><br> Defendants. | Cause No.: 3:12-CV-86 |

**OPINION AND ORDER**

This matter is before the Court for resolution of several pending motions. First, the plaintiffs, David Wilgus ("Wilgus") and Angela Myers ("Myers") filed a motion to remand this case to state court. Docket at 7. The defendants, Hartz Mountain Corporation ("Hartz") and Wal-Mart Stores, Inc. ("Wal-Mart") (often referred to collectively as "defendants") both filed motions to dismiss this case for failure to state a claim, pursuant to Fed.R.Civ.P. 12(b)(6). *See* docket at 9 (Hartz motion to dismiss) and 11 (Wal-Mart motion to dismiss). The defendants also filed a motion for hearing (docket at 25) and a motion for review of a magistrate judge's opinion and order (docket at 34). For the reasons discussed below, the plaintiffs' motion to remand is **DENIED**; Hartz's motion to dismiss is **GRANTED**; Wal-Mart's motion to dismiss is **GRANTED**; the defendants' motion for hearing is **DENIED**; and the defendants' motion for review of the magistrate judge's decision is **DENIED.**[1]

---

[1] The defendants' motion for hearing (docket at 25) is DENIED since the Court concludes that all of the pending motions are expertly briefed by all the parties and the issues presented can be resolved based on the pleadings and evidence submitted. The defendants also filed a motion asking this Court to review (and reverse) an Opinion and Order entered on June

**DISCUSSION**

Wilgus and Myers filed their Complaint against Hartz and Wal-Mart on January 13, 2012, in the LaPorte Circuit Court. The defendants removed the case to this Court pursuant to 28 U.S.C. § 1332(d)(2)(A). In their Complaint, Wilgus and Myers assert several claims against Hartz and Wal-Mart for damages they allegedly suffered after using a Hartz flea and tick product to treat their dogs. After using the product, known as "UltraGuard," Wilgus's pet dog, a six-year-old Siberian Husky named Timber, became violently ill and died within about 24 hours. Myers also used the product on her dog, a four-year-old Chihuahua named Mila. Mila also became extremely ill within a day after Myers applied the product, although she eventually recovered.

The plaintiffs allege that "Hartz has for many years manufactured flea and tick control products that are sold over the counter known to contain Pyrethrins, or the synthetic version of the same chemical, Pyrethroids, including Permethrin. . . . Pyrethrins are derived from Chrysanthemums, which is [sic] known to poison animals." Complaint, p. 4. Both plaintiffs purchased the product at a Wal-Mart store. The plaintiffs claim that the UltraGuard product is unreasonably dangerous and caused their pets to become ill and, in Wilgus's case, caused death.

---

26, 2012, by Magistrate Judge Christopher A. Nuechterlein. In that order (*see* docket at 33), Judge Nuechterlein denied a motion by Hartz and Wal-Mart to transfer this case to the district court for the District of New Jersey, as similar class action cases against Hartz are already pending in that district. Defendants argue that the Magistrate Judge erred in concluding that venue was more proper in the Northern District of Indiana. This Court has reviewed the magistrate's Opinion and Order and finds that it properly analyzes the issues relating to venue. The magistrate's order properly concluded that the factors weighing in favor of the case remaining in Indiana outweighed the factors that arguably favored transferring the case. Because the magistrate's reasoning is set forth clearly and concisely in his Opinion and Order, this Court need not address the issue further, and the defendants' motion for review of that opinion (docket at 34) is DENIED.

In their Complaint, Wilgus and Myers brought suit on behalf of themselves and all other similarly situated individuals who purchased the Hartz product at Wal-Mart stores in Indiana and experienced similar tragic results. The plaintiffs allege the following causes of action against the defendants:

1. Breach of implied warranty of merchantability pursuant to Indiana Code § 26-1-2-314;

2. Breach of express warranty;

3. Unjust enrichment against Wal-Mart (for profiting from the sale of the alleged faulty product);

4. Strict product liability pursuant to I.C. § 34-20-2-1 *et seq.*;

5. Common law negligence against both defendants for manufacturing and selling the product;

6. Claims under the Indiana Consumer Fraud Act, I.C. § 24-5-0.5-1, *et seq.*; and

7. A claim for punitive damages.

*See* Complaint, pp. 10-16. The plaintiffs do not assert any claims under federal law. However, the defendants removed the case to this Court based on diversity jurisdiction[2] and the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1332(d)(2)(A).

As stated at the outset, the plaintiffs seek to have this case remanded to the state court in LaPorte County, Indiana while the defendants argue that the Complaint should be dismissed since all of the plaintiff's state law claims are preempted by the Federal Insecticide, Fungicide, and Rodenticide Act ("FIFRA"), 7 U.S.C. §§ 136-136y, et al. The plaintiffs point out that the CAFA contains a jurisdictional requirement that the amount in controversy for a federal class

---

[2] The plaintiffs are residents of LaPorte County, Indiana. Hartz Mountain is a Delaware corporation with its principal place of business in New Jersey. Wal-Mart is a Delaware corporation with its principal place of business in Arkansas.

3

action suit must exceed $5,000,000.00. *See* 28 U.S.C. § 1332(d)(2). The plaintiffs argue that the defendants have not established this jurisdictional requirement and, since the case contains only state law causes of action, it should be remanded to state court. The defendants argue that jurisdiction is proper in this Court and that the plaintiffs' claims should all be dismissed because they are preempted by FIFRA.

**1. Plaintiffs' Motion to Remand.**

The plaintiffs seek to have this case remanded to state court, arguing that "defendants have failed to submit any evidence in support of their assertion that the amount in controversy exceeds $5 million as required under the [CAFA]. 28 U.S.C. § 1332(d)(2). Memorandum in Support of Plaintiffs' Motion to Remand, docket at 8, p. 1. Since this is a jurisdictional issue, the Court will begin by addressing the motion to remand.

Plaintiffs are correct when they point out that the removing party bears the burden of demonstrating how the amount in controversy exceeds the jurisdictional threshold of $5 million. However, they also argue that defendants must establish the amount in controversy "by a preponderance of the evidence." *Id.*, p. 3 (citing *Brill v. Countrywide Home Loans, Inc.*, 427 F.3d 446, 448 (7th Cir. 2005) and *Spivey v. Vertue, Inc.*, 528 F.3d 982, 986 (7th Cir. 2008)). Plaintiffs argue in their motion that defendants merely concluded that the amount in controversy could exceed $5 million but failed to present any evidence to substantiate this position.

In response, the defendants present a declaration from Michael Pendergast, the Senior Financial Analyst for Hartz. Defendants' Opposition to Plaintiffs' Motion to Remand, docket at 16, Pendergast Declaration. In that declaration, Pendergast states that during the relevant class action time period (2008 through 2011, inclusive), Hartz sold a total of just over two million

4

units of its flea and tick product to retailers in Indiana, with a total sales price of just under $6.2 million. Pendergast Declaration, ¶¶ 2-6. The defendants also argue that the amount in controversy threshold is met since the plaintiffs themselves state in their Complaint that the class members "number in at least the thousands." Complaint, p. 8, ¶ 48. Since every potential class member could theoretically recover statutory damages pursuant to the plaintiffs' claims under the Indiana Deceptive Consumer Sales Act, defendants argue that the amount in controversy is satisfied on that single basis alone "if Hartz sold more than 5,000 units of its flea and tick products containing pyrethrin or pyrethrin derivatives in Indiana in the two-year period prior to the filing of Plaintiffs' Complaint. . . . In fact, Hartz sold 1,061,520 units . . . during this two-year period." Defendants' Opposition, p. 9.[3]

The plaintiffs reply by arguing that the Pendergast declaration fails to establish that the amount in controversy exceeds the $5 million threshold since the declaration presents only evidence of the total number of units sold to retailers but presents "no evidence of the potential value of damages awarded to the actual proposed class of *consumers*[.]" Plaintiffs' Reply Brief, docket at 18, p. 1.

The plaintiffs insistence that the defendants prove the amount in controversy by a preponderance of the evidence is misplaced. As the defendants point out, the Seventh Circuit addressed this issue and explained that the burden on a removing party in a class action suit is not as steep as the plaintiffs represent. In *Back Doctors Ltd. v. Metropolitan Property and Cas.*

---

[3] The Indiana Deceptive Consumer Sales Act, as the defendants correctly point out, is subject to a two-year statute of limitations, thus the defendants argue that the amount in controversy is met based solely on sales of Hartz flea and tick medication in Indiana in the two-year period immediately preceding the filing of the plaintiffs' Complaint.

*Ins. Co.*, 637 F.3d 827 (7th Cir. 2011), the appellate court explained in great detail the burden that a removing party must meet in such instances. The court held as follows:

> References to a "reasonable probability" of recovering the amount in controversy entered this circuit's jurisprudence in 1993 and, we thought, departed in 2006 with *Meridian Security Insurance Co. v. Sadowski,* 441 F.3d 536 (7th Cir. 2006). Our 2006 opinion traced the phrase's origin and evolution in connection with the amount-in-controversy requirement and concluded that it had been misunderstood so frequently that it had to go. The Supreme Court held in *St. Paul Mercury Indemnity Co. v. Red Cab Co.,* 303 U.S. 283, 293, 58 S.Ct. 586, 82 L.Ed. 845 (1938), that allegations about the amount in controversy must be accepted unless it is impossible for the plaintiff to recover the jurisdictional minimum. Jurisdictional *facts* must be alleged and proved by a preponderance of the evidence; the phrase "reasonable probability," when introduced by *Shaw v. Dow Brands, Inc.,* 994 F.2d 364, 366 (7th Cir. 1993), was designed to express that point. But many judges misunderstood the phrase as requiring the proponent of federal jurisdiction to establish that it was likely that the plaintiff would obtain a judgment exceeding the amount-in-controversy requirement.
>
> We tried in *Brill v. Countrywide Home Loans, Inc.,* 427 F.3d 446 (7th Cir. 2005), to end the misunderstanding and confine the phrase to a search for what the plaintiff actually sought: "part of the removing party's burden is to show not only what the stakes of the litigation *could be,* but also what they *are* given the plaintiff's actual demands. That's the point of statements in our decisions that the removing litigant must show a reasonable probability that the stakes exceed the minimum. The demonstration concerns what the plaintiff is claiming (and thus the amount in controversy between the parties), not whether plaintiff is likely to win or be awarded everything he seeks." 427 F.3d at 449 (emphasis in original; citations omitted). When this clarification proved to be insufficient, we decided in *Sadowski* to ditch the phrase. *Sadowski* was circulated to all judges under Circuit Rule 40(e) and has the status of an en banc decision, but confusion has continued, so we publish this short opinion to drive the point home. The legal standard was established by the Supreme Court in *St. Paul Mercury:* unless recovery of an amount exceeding the jurisdictional minimum is legally impossible, the case belongs in federal court. Only jurisdictional *facts*, such as which state issued a party's certificate of incorporation, or where a corporation's headquarters are located, need be established by a preponderance of the evidence.

637 F.3d 827, 829 -830. The standard is clear. "[U]nless recovery of an amount exceeding the jurisdictional minimum is legally impossible, the case belongs in federal court." In this case,

regardless of how one wants to "crunch the numbers," plaintiffs could potentially recover damages exceeding $5 million if they succeeded in all or even most of their claims and established, as they maintain, that the class members number "in at least the thousands." The Court concludes that the defendants have met their burden of establishing that this Court has jurisdiction over this case pursuant to the CAFA. Accordingly, the motion to remand filed by the plaintiffs is DENIED.

**2. Defendants' Motion to Dismiss.**

Federal Rule of Civil Procedure 12(b)(6) authorizes dismissal if the complaint fails to set forth a claim upon which relief can be granted. When analyzing a Rule 12(b)(6) motion to dismiss, the Court construes the complaint in the light most favorable to the plaintiff, accepts all well-pleaded factual allegations as true, and draws all reasonable inferences in favor of the plaintiff. *Tamayo v. Blagojevich*, 526 F.3d 1074, 1081 (7th Cir. 2008). However, the Court need not take unsupported legal conclusions contained in the complaint as true. *Ashcroft v. Iqbal,* 556 U.S. 662, 679 (2009). A complaint must contain sufficient factual matter to "state a claim that is plausible on its face." *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal,* 556 U.S. 662 (citing *Twombly,* 550 U.S. at 556).

As stated above, the defendants have moved for the dismissal of this entire case based on federal preemption under FIFRA. FIFRA imposes regulations on the sale and distribution of pesticides in the United States. Manufacturers of pesticides, such has Hartz, must register their products with the Environmental Protection Agency and submit detailed information about each

7

product to the EPA. The Hartz UltraGuard line of products contains pesticides and so its sale and distribution is regulated by the EPA. As Hartz explains:

> FIFRA is a comprehensive regulatory statute that regulates the use, sale, and labeling of pesticides. To register a pesticide product, a manufacturer must submit a proposed label to the EPA, along with supporting data, which the EPA must review and approve before the product is registered for sale to the public. . . . Registration of a pesticide is "*prima facie* evidence that the pesticide, its labeling and packaging comply with the registration provisions" of FIFRA. . . . FIFRA and its implementing regulations have specific labeling requirements regarding the content and format of what can and cannot appear on a pesticide label. FIFRA regulates the products' (I) ingredient statement, (ii) hazard and precautionary statements for hazards to humans, domestic animals, and the environment, (iii) directions for use, and (iv) use classifications.

Hartz Memorandum in Support of Motion to Dismiss, docket at 10, pp. 3-4 (internal citations omitted). In fact, the requirements of the FIFRA, as enforced by the EPA, are incredibly specific and detailed. "FIFRA mandates, among other things, the location of the warning (i.e., the front and/or back panel of the label), the actual words used in the warning, the font size, and the prominence of the warning." *Id*., p. 4 (citing 40 C.F.R. § 156.60 (2010)). Hartz maintains (and the plaintiffs do not dispute) that its UltraGuard products meet all the labeling mandates imposed by FIFRA. *Id*. Manufacturers are not allowed to deviate from the requirements of FIFRA. Finally, "[i]n order to ensure the exclusivity of the EPA's regulatory scheme, FIFRA contains an express preemption clause, which provides that the States 'shall not impose or continue in effect any requirements for labeling or packaging in addition to or different from those required under this subchapter.'" *Id*., p. 5 (citing 7 U.S.C. § 136v(b) (2010)).

As the defendants correctly point out, "plaintiffs do not assert that the UltraGuard label violates any particular section of FIFRA or EPA regulations. Their claim is that Hartz failed to disclose risks allegedly associated with the products. However, the EPA mandates the warnings

8

that must be on the UltraGuard product label, and challenges to the adequacy of a pesticide's label or warning are preempted by FIFRA if they would require information different from what FIFRA requires." *Id*., p. 8 (citations omitted). Defendants maintain that the plaintiffs' "Complaint contains express challenges to the product warnings through the express warranty claim, as well as product liability and consumer fraud claims that imply that the label did not adequately warn of potential dangers." *Id*. As such, plaintiffs' claims in this action are preempted by FIFRA.

The plaintiffs insist that they "make no allegations whatsoever that Defendants' labels are insufficient. Rather Plaintiffs allege that Defendants' advertising and marketing of the products is deceptive in that it fails to disclose the risks to consumers' pets from use of the products." Plaintiffs' Response in Opposition to Motion to Dismiss, p. 3.

The Court disagrees with the plaintiffs' characterization of their claims. Throughout their Complaint, the plaintiffs reference the inadequacy of the UltraGuard product labeling. The Complaint contains the following statements:

1. ". . . Defendant Hartz's products were un-merchantable because they could easily cause an overdose of Pyrethrin when used *in accordance with label instructions*." Complaint, p. 9 (italics added).

2. "The Hartz Flea Product in question is not merchantable. It would not pass without objection in the trade, nor is it fit for the ordinary purposes for which it is used in that it can cause pets to become ill or die when the product is used *in accordance with its instructions*." *Id*., p. 10 (italics added).

3. "Defendants' written warranty expressly stated that the product could be used on the types of

9

pets *set forth on the label* and that it was safe for use on that type of pet." *Id*., p. 11.

4. Plaintiffs then note that the UltraGuard product contained the following warning on its label:

> Sensitivity, such as slight transitory redness, of the skin at the site of application may occur after using ANY pesticide product for pets. If signs of sensitivity occur, bathe your pet with mild soap, rinse with large amounts of water and consult a veterinarian immediately.

*Id.* Plaintiffs then claim that "[t]he foregoing statement advised that the worst adverse consequences which could be expected from the use of the product would be slight transitory redness of the skin." *Id.* Again, this warning appears on the product label.

5. " . . . Defendants were aware that the product was reasonably likely to result in such damages being incurred, but concealed from Plaintiffs and other Class members the fact the products could be harmful to pets." *Id*., p. 12.

6. "It was reasonably foreseeable by Defendants that if they failed to use reasonable care in designing, manufacturing and/or selling the flea-care product, pets upon which the product was used would suffer illness or death even when the product was used *in accordance with the label instructions* and in other reasonably foreseeable ways." *Id.*, p. 14 (italics added).

Throughout the Complaint, then, the plaintiffs directly challenge the labeling of the UltraGuard product and argue that the defendants failed to adequately warn of certain alleged harms that could result from its use. All of the plaintiffs' claims are implicitly, if not expressly, based on a failure to warn argument. As such, they are preempted by FIFRA.

In a supplemental brief filed on December 5, 2012 (docket at 37), the defendants presented the Court with a copy of a decision issued recently by the U.S. District Court for the Northern District of Ohio. In that case, *Smith et al. v. Hartz Mountain Corporation*, 2012 WL

5451726 (N.D. Ohio Nov. 7, 2012), plaintiffs asserted several claims against Hartz for personal injuries sustained after they used Hartz's UltraGuard Plus Flea and Tick Carpet Powder in their residence to remedy a flea infestation. Plaintiffs alleged that they suffered from "pyrethrin toxicity" after they were exposed to the UltraGuard product. The claims they brought against Hartz under Ohio law were virtually identical to the claims being asserted in this case. They included claims for statutory product liability, breach of express warranty, violation of the Ohio Consumer Sales Practices Act, implied warranty of merchantability, and loss of consortium. Hartz filed a motion to dismiss the claims based on FIFRA preemption and the court granted the motion.

After discussing FIFRA and its strict guidelines for pesticide labeling, the Ohio court noted that "FIFRA also preempts 'any statutory or common-law rule that would impose a labeling requirement that diverges from those set out in FIFRA and its implementing regulations.'" *Smith*, 2012 WL 5451726 * 2 (quoting *Bates v. Dow Agrosciences L.L.C.*, 544 U.S. 431, 438 (2005)). The court dismissed all of plaintiffs' claims and explained its decision as follows:

> Plaintiffs contend Hartz failed to disclose the risks of harm to humans from their products. Plaintiffs claim they do not allege Hartz's labels are insufficient, but that Hartz's advertising and marketing is deceptive because it fails to disclose risks . . . from use of the products. . . . In truth, Plaintiffs do allege Hartz's labels are insufficient, as they state the UltraGuard Powder was defective due to inadequate warning or instruction on the product or container. . . . Plaintiffs seek to hold Hartz liable for labeling the UltraGuard Powder consistently with the EPA's requirements, and FIFRA clearly proscribes any state-law labeling requirement that is in addition to or different from the FIFRA requirements. . . .The appropriate standard by which to judge the sufficiency of the product label is contained in the EPA regulations. A claim that state law would require something different from those regulations may not go forward. Plaintiffs' claim for inadequate warning is preempted by FIFRA.

11

*Id.*, *2-4.

The present case suffers the same fate. The plaintiffs continue to argue that they are *not* challenging the Hartz product labeling. In their supplemental response discussing the *Smith* case, the plaintiffs insist that "Defendants here do not identify any state-law requirement, or any claim by Plaintiffs, which would require Hartz to do anything with its label contrary to or different from the requirements of FIFRA. FIFRA requires manufacturers to warn of dangers posed by their products. Unlike the facts in *Smith*, Plaintiffs contend here, consistent with FIFRA, that Hartz should have warned of potential dangers posed by its products, but Plaintiffs have made no claim that the warning should [be] made in any form, or use wording, other than what was required by EPA regulations." Plaintiffs' Response to Supplemental Memorandum, docket at 38, p. 2. But this is nothing more than semantics. Plaintiffs can argue all they want that their claims are not preempted because they are not specifically seeking changes to the labeling of Hartz's product, but the allegations made throughout their Complaint make it clear that all of their claims in this case are based on Hartz's failure to warn them of potential dangers associated with the UltraGuard product. Their Complaint, as noted above, even makes express reference to the product label and claims it is inadequate.

This Court finds the decision in *Smith* to be extremely persuasive, especially given that the claims asserted by the plaintiffs in that case are mirror images of the claims presented in this case. Allegations that Hartz failed to place adequate warnings on its products, no matter how those claims are couched, run afoul of FIFRA and cannot move forward. For these reasons, the defendants' motion to dismiss must be granted.

## CONCLUSION

For the reasons set forth above, the plaintiffs' motion to remand is **DENIED**; Hartz's motion to dismiss is **GRANTED**; Wal-Mart's motion to dismiss is **GRANTED**; the defendants' motion for hearing is **DENIED**; and the defendants' motion for review of the magistrate judge's decision is **DENIED.**

Date: February 19, 2013.

    /s/ William C. Lee
William C. Lee, Judge
United States District Court
Northern District of Indiana